UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERRY LEE WILCOX, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No.: 1:05-CV-107 |
| CSX TRANSPORTATION, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court for resolution of the Motion for New Trial or in the Alternative Renewed Motion for Judgment as a Matter of Law filed by the Plaintiff, Terry Wilcox ("Wilcox" or "plaintiff") on October 19, 2007. Defendant CSX Transportation, Inc., ("CSX" or "defendant") filed a brief in opposition to the motion on November 2, 2007, and Wilcox filed a reply brief on November 13, 2007. For the reasons discussed in this Order, the motion is DENIED.

**I. FACTUAL BACKGROUND**

Terry Wilcox was employed by CSX as a brakeman/conductor beginning on March 15, 1974. He continued in that position until September 2004. At that time, his career with CSX ended. Wilcox alleged that he was physically incapable of performing his duties as a result of the injuries he allegedly sustained while employed with the railroad. In his Complaint, Wilcox asserted three claims against CSX. In Count I, Wilcox alleged that CSX was liable to him under the provisions of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., for personal injuries he claimed he sustained during the course of his employment. More specifically, Wilcox claimed in Count I of his Complaint that "railroad 'ballast' was used by the

defendant to support the railroad tracks and track structures owned, maintained and used by the defendant in [Garrett, Indiana] where the plaintiff was required to perform his assigned duties." Amended Complaint, ¶ 8.  Wilcox stated that CSX used "large, oversized ballast" which caused injury to him over time.  *Id*., ¶ 11.  He claimed that he developed "injury over time from working on ballast that was large, oversized, loose, untamped or otherwise unsuitable for the assigned duties of a brakeman/conductor."  *Id*., ¶ 13.  Wilcox claimed that he "developed physical injuries that were caused by the cumulative effect of working on ballast that was large . . . and otherwise unsuitable for use as a walking surface while performing the duties of a brakeman/conductor for the defendant."  *Id*., ¶ 20.  According to Wilcox, he developed serious foot injuries as a result of having to perform his duties on this large ballast (as opposed to smaller sized ballast).  In Count II of his Complaint, Wilcox alleged that he sustained injuries on September 3, 2002, while performing his work duties.  *Id*., p. 7.  In Count III, Wilcox alleged that he sustained injuries on June 23, 2004, while performing his duties.  *Id*., p. 9.  The case was tried to a jury from October 1 through October 5, 2007.[1]  The jury returned a verdict in favor of CSX.  Docket at 139.

## II.  STANDARD FOR MOTION FOR NEW TRIAL OR JUDGMENT AS A MATTER OF LAW

Under Federal Rule 59, a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States." Fed.R.Civ.Proc. 59(a)(1).  The Seventh Circuit has held that a court may grant a new trial if "the

---

[1] Prior to trial, Wilcox voluntarily dismissed Count II of his Complaint.  Also prior to trial, Count III of his Complaint (the claim relating to an incident on June 23, 2004) was essentially subsumed into Count I (the "repetitive injury" claim).  See Revised Statement of the Case, Docket at 126.  Consequently, the court's final jury instructions and the verdict form did not reference separate counts.  See Docket at 137 (Court's Final Jury Instructions) and 140 (Jury Verdict).

verdict is against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party. *Miksis v. Howard,* 106 F .3d 754, 757 (7th Cir. 1997); *see also Allison v. Ticor Title Ins. Co. of Chicago,* 95 F.3d 627, 636 (7th Cir. 1996)." *Peterson v. Farrakhan*, 2007 WL 2025213 *3 (N.D. Ind. July 09, 2007).

>
> Federal Rule 61 is also relevant to motions for new trials.  Rule 61 states that:
>
> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed.R.Civ.P. 61.  In other words, "[i]n order to receive a new trial, the defendant must show that the error was substantial enough to deny him a fair trial." *Perry v. Larson,* 794 F.2d 279, 285 (7th Cir. 1986).  "The court has the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice."  11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2805 (2006).  A prejudicial error of law may justify a new trial.  *Id.*  A new trial may also be granted if the verdict is against the weight of the evidence.  *Id.* In determining whether to grant a new trial, "a jury verdict must be accorded great deference." *Foster v. Cont'l Can Corp.,* 783 F.2d 731, 735 (7th Cir. 1986).  Also, "unlike a J.N.O.V. motion, the judge may consider the credibility of the witnesses, the weight of the evidence, and anything else which justice requires." *Spanish Action Comm. of Chi. v. City of Chi.,* 766 F.2d 315, 321 (7th Cir. 1985).  *Westchester Fire Ins. Co. v. American Wood Fibers, Inc.*, 2006 WL 3147710 *1 (N.D. Ind., October 31, 2006).

>
> As to judgment as a matter of law, the standard is different:

3

> [I]n addressing [a party's] motion for judgment as a matter of law, the court reviews the evidence in the light most favorable to the [nonmovant], granting it every reasonable inference that the jury might have drawn in its favor. *E.g.*, *Massey v. Blue Cross-Blue Shield of Illinois,* 226 F.3d 922, 924 (7th Cir. 2000); *Frazier v. Norfolk & Western Ry. Co.,* 996 F.2d 922, 924 (7th Cir. 1993).  The court may not "reweigh or reevaluate the evidence–that task is reserved to the jury as factfinder." *Frazier,* 996 F.2d at 924, quoting *Siddiqi v. Leak,* 880 F.2d 904, 908 (7th Cir. 1989).  The court may set aside the jury's verdict and enter judgment as a matter of law only when the evidence is such that, without resolving conflicts in the testimony or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable jurors could have reached.  *Lane v. Hardee's Food Systems, Inc.,* 184 F.3d 705, 706-07 (7th Cir. 1999); *Klunk v. County of St. Joseph,* 170 F.3d 772, 775 (7th Cir. 1999).

*U.S. S.E.C. v. Church Extension of the Church of God, Inc.* , 2005 WL 3370568 *2 (S.D. Ind. (December 12, 2005)).  Regardless of the standard employed, the court concludes, for the reasons discussed below, that Wilcox is not entitled to a new trial or to judgment as a matter of law.

**III.  DISCUSSION**

In his motion for a new trial, or in the alternative judgment as a matter of law, Wilcox maintains that "the verdict of the jury is contrary to the manifest weight of the evidence . . . ." Plaintiff's Motion, Docket at 145, p. 1.  In the alternative, Wilcox argues that "the evidence adduced at the trial of this action points so strongly and overwhelmingly in favor of Plaintiff that reasonable jurors could arrive only at a verdict in Plaintiff's favor[.]" and that "the jury's verdict in Defendant's favor should be set aside and judgment entered on Plaintiff's behalf." *Id*., p. 2. CSX argues that "Plaintiff's alleged grounds for a new trial are unsupported by either law or fact.  Plaintiff failed to provide any evidence to support a finding of negligence.  In addition, the issues were not overly complex, the evidence was in dispute, and there was no 'pernicious or undesirable occurrence at trial.'  Accordingly, Plaintiff is not entitled to a new trial."

4

Defendant's Memorandum in Opposition to Plaintiff's Motion for New Trial, or in the Alternative, Renewed Motion for Judgment as a Matter of Law ("Defendant's Memorandum"), Docket at 148, p. 3 (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 931 (5th Cir. 1982)).

### A.  Excluded Testimony of Robert Andres.

In his brief in support of his motion, in addition to arguing that the evidence overwhelmingly supported his claim that CSX was negligent and therefore liable for his injuries, Wilcox also argues that "this Court erred by limiting *in limine* the proposed testimony of [plaintiff's expert] Robert O. Andres, Ph.D. regarding the Defendant's lack of medical management and/or ergonomic program."  Plaintiff's Memorandum of Law in Support of Motion for a New Trial or in the Alternative Renewed Motion for Judgment as a Matter of Law ("Plaintiff's Memorandum"), Docket at 146, p. 2.  Wilcox maintains that the court's ruling to exclude a portion of Mr. Andres's expert opinion prevented him from establishing an essential element of his claim, to wit: that it was foreseeable that the defendant's use of mainline (large) ballast as opposed to yard (small) ballast would likely result in physical injury to employees working in the CSX railroad yard.  *Id*.  As Wilcox states it, "Andres's barred testimony would have been directly relevant to this issue at trial and assisted the jury in understanding what the Defendant reasonably should have foreseen or known."  *Id*.  Wilcox also argues that CSX took advantage of the court's ruling regarding Andres's testimony and inappropriately argued to the jury that the type of injuries Wilcox sustained were not foreseeable.  Wilcox claims that "this Court's ruling, intended as a 'shield' to prevent jury confusion was used by the Defendant as a

5

'sword.'" *Id*., p. 22.[2]  Wilcox asserts that he "was significantly prejudiced by the Court's erroneous ruling pertaining to Andres's testimony on these issues and the Defendant's misuse of the ruling.  Accordingly, Plaintiff should be afforded a new trial." *Id*., p. 23.

Wilcox states that "[u]nder the FELA, Plaintiff need prove "foreseeability" as a[n] element of negligence.  The Defendant repeatedly argued at trial that it could not have reasonably foreseen that the large ballast at Garrett could cause cumulative trauma injuries.  Andres's barred testimony would have been directly relevant to this issue at trial and assisted the jury in understanding what the Defendant reasonably should have foreseen or known." Plaintiff's Memorandum, p. 2.  Consequently, Wilcox argues, "[e]xcluding this testimony at trial was unduly prejudicial to Plaintiff and constitutes sufficient error such that he should receive a new trial." *Id*., p. 3.

The court issued a lengthy written opinion on May 30, 2007 (see Docket at 75) addressing, among other issues, the proposed testimony of Mr. Andres.  In that Order, the court denied a motion in limine filed by CSX to bar Andres's testimony altogether.  Instead, the court permitted Andres's testimony but limited its scope.  Specifically, the court ruled that Andres would not be permitted to testify about CSX's lack of a "medical management program" or "ergonomic program."  The court concluded, for reasons set forth in detail in that Order, that this

---

[2] The court does not agree with Wilcox's characterization of the argument at trial.  To a very great extent, this case was a classic "battle of experts."  Each side presented expert testimony concerning the plaintiff's plantar faciitis and what may have caused it.  In the court's opinion, the issue of causation was much more prominent at trial than the issue of foreseeability.  In any event, the question before the court now is, was the verdict reasonable based on the evidence and argument presented or was it clearly contrary to the overwhelming weight of that evidence?  The court agrees with CSX that the jury's verdict had a reasonable basis in the evidence and should not be disturbed.

testimony was not relevant and could lead the "jury to wrongfully conclude that the lack of such a program necessitates a finding of negligence against defendant regardless of the jury's finding on the ballast issue." *Id.*, p. 29. Wilcox presents no argument at this point that changes the court's opinion on this issue. And since this issue was addressed at some length in the court's previous Order, it does not warrant further consideration now. Whether the court's exclusion of a portion of Andres's proposed testimony was in error is a matter best left for resolution by the appellate court should Wilcox wish to present the issue in that forum.

### B.  Examination of the Evidence and the Jury's Verdict.

The true crux of Wilcox's argument in his motion for a new trial or for judgment as a matter of law is that the jury's verdict was simply wrong "because the manifest weight of the evidence is undeniably in Plaintiff's favor." Plaintiff's Memorandum, p. 3. Wilcox argues that "[t]he uncontradicted trial evidence showed that Defendant failed to provide Plaintiff with a safe place to work by negligently placing large mainline ballast, instead of small walkway ballast, in the Garrett yard in 1999." Plaintiff's Memorandum, p. 1. He further maintains that CSX did this "contrary to its own ballasting regulations, the recommendations of the American Railway Engineering and Maintenance of Way Association (AREMA), the recommendations of engineer Raymond A. Duffany in 2001, the recommendations of the Federal Railroad Administration in 2001, the recommendations of Defendant's own safety committee beginning in 2000 and the complaints of union representative Mike Reel since 1999." *Id.*, p. 2. According to Wilcox, "[t]his evidence overwhelmingly established that the Defendant was negligent and the jury's verdict constitutes a miscarriage of justice such that Plaintiff should be afforded a new trial." *Id.* Wilcox bolsters his argument by recounting and listing many of the exhibits he presented at trial,

7

including copies of minutes from Safety Committee meetings held during the years 2000 through 2004.[3]  *Id*., pp. 5-6.  He also points out that certain witnesses, including CSX roadmaster Dan Coffin and CSX's liability expert Roy Dean, testified that the use of large ballast in the Garrett yard was contrary to the railroad's own standards.  *Id*., pp. 6-7.  According to Wilcox, "no reasonable jury could find that the Defendant was not negligent in its actions by both placing the large ballast down at Garrett yard and then allowing it to remain on the surface of the yard until 2005."  *Id*., p. 7.

Wilcox also presented the testimony of two medical doctors who treated him for his injuries.  Dr. Scott Karr and Dr. Rodney Stuck both testified that they believed Wilcox's physical problems were the result of him having worked and walked on large ballast over a period of time.  (Transcript of Video Deposition of Scott Karr, M.D., Docket at 131, and Transcript of Video Deposition of Dr. Rodney Stuck, Docket at 132.)  On the other hand, CSX's experts, Dr. Mark Reecer, David Nieman, and Stephen Messier, all testified that they believed there were many various causes of plantar faciitis and that many different types of surfaces could cause or exacerbate such a condition in any individual.  CSX points out that "there was evidence on both sides of this issue . . . ."  Defendant's Memorandum, p. 10.  CSX argues that "[w]hile Plaintiff did present the opinions of some doctors who believed Plaintiff's condition was related to walking on the larger ballast, '[t]he mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence.'" *Id*. (quoting the court's Final Jury Instruction No. 24).

---

[3] In many Safety Committee meetings held during these years, the issue of ballast size and placement was discussed.  The minutes also show that there was some discussion about replacing large ballast in certain areas with smaller, yard ballast.

CSX stresses that there was an abundance of contradictory evidence presented at trail on the issue of medical causation.  Both sides presented experts, including physicians and researchers.  These experts, including physicians Stuck and Reecer, and research experts Andres, Messier and Nieman, offered various opinions concerning Wilcox's physical problems and whether they were caused by the fact that he worked (at least much of his time) on surfaces comprised of mainline ballast.  *Id*., pp. 9-12.

The court agrees with the position argued by CSX.  The jury was provided with much evidence from both parties on the issues presented during trial.  Wilcox is correct when he argues that he presented much evidence that having to walk and work on large ballast may have caused his plantar faciitis.  He also presented evidence that CSX's use of large ballast was contrary to certain of its own regulations and the recommendations of its own Safety Committee.  On the other hand, CSX presented evidence that it was not negligent simply because it used large ballast as opposed to small ballast in portions of the Garrett yard.  CSX argues that Wilcox "apparently believes that simply proving a violation of internal railroad standards relieves him of his burden to prove such conduct was negligent.  Plaintiff is wrong.  A violation of internal railroad rules is not negligence *per se*."  Defendant's Memorandum, p. 3 (citations omitted).

CSX also points out that other evidence presented at trial raised questions regarding whether working on large ballast was in fact the cause of Wilcox's physical problems.  For example, CSX notes that there was contradicting evidence presented regarding how much time Wilcox actually spent walking and working on large ballast as opposed to other surfaces.  *Id*., p. 4.  CSX argues that "the testimony from both Plaintiff's witnesses and CSXT's witnesses was that employees were exposed to small ballast, large ballast, mixtures of ballast, muddy surfaces,

9

flat surfaces and sloped surfaces." *Id*., p. 5.  CSX points specifically to the testimony of Coffin and Duffany, both of whom testified that the surfaces at the Garrett yard were varied and not all of the work surfaces consisted of large ballast.  *Id*. (quoting excerpts of trial testimony).

CSX also takes issue with Wilcox's assertion that the evidence at trial that CSX ignored or violated railroad safety standards was "'unrebutted' or 'uncontradicted'" and that there "'was no evidence . . . admitted at trial to suggest that the railroad did not violate its own standards.'" *Id*., p. 6 (quoting Plaintiff's Memorandum, p. 19).  CSX states that even plaintiff's own expert, Ray Duffany, testified that the only standards that bind a railroad's use of ballast are the Federal Railroad Administration's . . . Track Safety Standards."  *Id*.  CSX succinctly summarizes its argument as follows:

> The suggestion that there was not evidence on both sides of this issue is contrary to what actually was presented at trial.  While Plaintiff's expert witness may have testified to his opinion that the Garrett Yard conditions violated CSXT's standards and other non-binding "industry standards," CSXT presented the testimony of its Roadmaster and its former Chief Engineer that the standards were for new construction and CSXT did not violate any such standards.  The jury was instructed that it was free "to decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of each witness.  (Jury Instruction No. 7).
> The jury was not required to simply accept Plaintiff's expert's opinion of whether the standards had been violated.  The jury was instructed that the fact the expert "has given an opinion does not mean that you are required to accept it.  Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case."  (Jury Instruction No. 8.)

*Id*., p. 8.

Wilcox is understandably disappointed with the outcome at trial, as any losing party would be.  No doubt this disappointment is compounded by the fact that a plaintiff in a FELA action carries a rather "featherweight" burden of proof.  If a plaintiff can establish some causal

10

connection between the defendant's negligence and the plaintiff's alleged injuries, then a jury can find in favor of the plaintiff and award damages. *E.g.*, *Oglesby v. Southern Pac. Transp. Co.*, 6 F.3d 603, 608 (9th Cir. 1993); *Norfolk & Western Ry. Co. v. Ayers*, 123 S.Ct. 1210, 1214 (2003). But as CSX points out, a jury can also find that a defendant railroad presented sufficient evidence to establish that its acts and/or omissions were not negligent in the first place. This is obviously what occurred in the present case. Contrary to Wilcox's characterization of the evidence, there was clearly a sufficient basis for the jury's verdict. A trial court "may not step in and substitute its view of the contested evidence for the jury's." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 634 (7th Cir. 1996). Rather, the court must "view the evidence in the light most favorable to the nonmoving party and ascertain whether there exists 'any evidence upon which a jury could reach a verdict for the party producing it.'" *United Airlines, Inc. v. U.S.*, 111 F.3d 551, 553 (7th Cir. 1997) (citations omitted). In this regard, as CSX states in its brief, a plaintiff has a "'herculean burden.'" (Defendant's Memorandum, p. 16 (quoting *Gile v. United Airlines, Inc.*., 213 F.3d 365, 372 (7th Cir. 2000)). In this case, Wilcox has not met his burden of establishing that he is entitled either to a new trial or to judgment as a matter of law. He has not raised any issue that establishes that the jury's verdict was clearly erroneous or that the trial–or any part of it–was manifestly unfair to him.

     As CSX pointed out in its brief, after receiving the verdict and releasing the jurors, this court stated to counsel that "[this] is a classic case. I am aware there were two different stories to tell. This was clearly a case for the jury to decide, and they did." *Id*., p. 1 (quoting Trial Transcript, Defendant's Exh. A). The court made that statement after thanking counsel for both sides "for the fine preparation and presentation of the case. I think you did a fine job with it."

11

*Id*.  The trial of this case was well presented and the issues for the jury were clear.  The attorneys for both sides did an admirable job of presenting their evidence and argument.  The jury returned its verdict after several hours of deliberation.  Therefore, given that there was an abundance of contradictory evidence presented during trial, the issues were thoroughly and efficiently presented to the jury, and there is a reasonable evidentiary basis for the jury's verdict, the jury's decision should be afforded the deference to which it is entitled.

## CONCLUSION

For the reasons discussed herein, the Motion for New Trial or in the Alternative Renewed Motion for Judgment as a Matter of Law filed by the plaintiff Terry Wilcox is DENIED.

February 7, 2008.

                                            /s/   William C. Lee
                                            William C. Lee, Judge
                                            United States District Court
                                            Northern District of Indiana